OPINION
{¶ 1} Relator, Charles C. Cordle, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his motion for an R.C. 4123.57(D) change of occupation award, and to grant said award. *Page 2 
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who rendered a decision, including findings of fact and conclusions of law, which is appended to this opinion. The magistrate found that the commission abused its discretion when it denied relator's motion for a change of occupation award. The magistrate interpreted R.C. 4123.57(D) and Ohio Adm. Code 4121-3-25(A)(1) to prohibit a change of occupation award due to exposure to silica dust, asbestos or coal dust in the course of employment during any period that the claimant received temporary total disability ("TTD") or permanent total disability ("PTD") compensation for disability arising from silicosis, asbestosis or coal miner's pneumoconiosis. The magistrate further determined that neither R.C. 4123.57(D) nor Ohio Adm. Code 4121-3-25(A)(1) prohibit a change of occupation award simply because the claimant's physician opined that the claimant was TTD. Because there was no evidence before the commission that relator was seeking a change of occupation award for a period during which relator had been awarded TTD or PTD compensation, the magistrate found that the commission abused its discretion in denying relator a change of occupation award. Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus and order the commission to vacate its order denying the change of occupation award. The magistrate has also recommended that we remand this matter to the commission to enter a new order that adjudicates relator's motion. Lastly, the magistrate has recommended that we deny the employer's motion to dismiss or, in the alternative, for summary judgment. *Page 3 
 {¶ 3} Respondents, Biomass Group, LLC, and the commission, filed separate objections to the magistrate's decision.[1] Because Biomass's objection is dispositive of this action, we address it first.
 {¶ 4} Biomass argues that the commission did not abuse its discretion when it denied relator's motion for a change of occupation award because relator failed to present evidence to support the award. We agree.
 {¶ 5} Eligibility for a change of occupation award requires the claimant to satisfy essentially two conditions. First, the claimant must produce evidence that a change of occupation is medically advisable because the claimant suffers from silicosis, coal miner's pneumoconiosis or asbestosis contracted in the course of employment. Second, the claimant must demonstrate that he or she is not totally disabled from said condition. R.C. 4123.57(D); Ohio Adm. Code 4121-3-25(A)(1).
 {¶ 6} Although relator cited to the report from Dr. Newman, neither Dr. Newman nor Dr. Subbiah opined that a change of occupation was medically advisable. Nor was there any other medical evidence before the commission indicating that a change of occupation was medically advisable. Therefore, relator failed to establish the first condition of eligibility — a change of occupation is medically advisable. The commission expressly recognized this failure in its decision:
 [Relator] relies solely upon the 02/20/2006 report from Dr. Newman. This report does not indicate a medical advisability of a change of occupation, but instead states that [relator] is temporarily and totally disabled. *Page 4 
 {¶ 7} The magistrate focused on the second eligibility condition and concluded that a claimant is precluded from receiving a change of occupation award to which he or she would otherwise be entitled only if the claimant has been awarded TTD or PTD compensation during the same time period that the claimant seeks the change of occupation award. The magistrate found that such an award is not prohibited simply because the claimant's physician opined the claimant was TTD. Although we agree with the magistrate's analysis of this point, the magistrate does not address the relator's complete failure to present evidence satisfying the first eligibility criteria — evidence that a change of occupation is medically advisable. Therefore, we cannot agree with the magistrate that the commission abused its discretion when it denied relator's motion for a change of occupation award. Accordingly, we sustain Biomass's objection.
 {¶ 8} Our resolution of Biomass's objection renders the commission's objection moot and we need not address it.
 {¶ 9} Following an independent review of this matter, we adopt the magistrate's findings of fact as our own, but not the magistrate's conclusions of law. For the reasons set forth above, we deny relator's request for a writ of mandamus. In addition, because we have sustained Biomass's objection to the magistrate's decision and denied relator's request for a writ of mandamus, the commission's objection is moot.
Biomass's objection sustained; writ of mandamus denied.
BRYANT and SADLER, JJ., concur. *Page 5 
 APPENDIX MAGISTRATE'S DECISION Rendered October 30, 2008 IN MANDAMUS {¶ 10} In this original action, relator, Charles C. Cordle, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion for an R.C. 4123.57(D) change of occupation award, and to enter an order granting the award. *Page 6 
Findings of Fact: {¶ 11} 1. The parties agree that in 1998 relator entered into an employment relationship with respondent Biomass Group, LLC ("Biomass"), a state-fund employer.
 {¶ 12} 2. In March 2005, the employment relationship ended.
 {¶ 13} 3. The record contains relator's handwritten note:
 * * * I was terminated from Biomass on 3-7-05 and I had several eye doctor app[ointments] and couldn't work for several months [and] didn't work from 4-1-05 until 1-1-06. I went to work for DHL. I am working part time for Brian Glass Company.
 {¶ 14} 4. On February 1, 2006, at his own request, relator was examined by Ralph W. Newman, D.O., who issued a report dated February 20, 2006, stating:
 * * * Mr[.] Cordle had been employed at Biomass since 1999, working 60 to 70 hours weekly for six years[.] Mr[.] Cordle began to develop shortness of breath, which became progressively worse with the passage of time, and he developed chronic obstructive pulmonary disease[.]
 Mr[.] Cordle presented with shortness of breath[.] He notes that he sleeps with a pillow and bends it over double, even though, Mr[.] Cordle reports that he awakens all hours of the night due to shortness of breath[.] Mr[.] Cordle has not been able to work since February of 2005, but states he would like to be able to work in some capacity. * * *
 * * *
 * * * [I]t is my opinion, within a degree of medical certainty, that Mr[.] Cordle developed a mild case of chronic obstructive pulmonary disease, dyspnea/asbestosis secondary to his exposure to asbestos, ground tobacco, and airborne chemicals during his employment at Biomass. Mr[.] Cordle has no history of smoking or previous lung conditions prior to his employment at Biomass.
 It would also be my opinion that due to these conditions, Mr[.] Cordle should be considered temporarily totally disabled, at least from the date of my examination on *Page 7 
February 1, 2006[.] It is noted that Mr[.] Cordle does express a desire to work in some capacity[.]
 {¶ 15} 5. On March 21, 2006, relator filed an application for workers' compensation benefits. The industrial claim is assigned claim number 06-815027. On the claim application (FROI-1), relator described his injury as follows: "Exposed to chemicals in eyes and breathing [and] skin. [Asbestos] Dust [and tobacco] waste and Hyplorike [sic] Calcium Chloride."
 {¶ 16} 6. On the claim application, relator further indicated that he last worked on March 7, 2005, and that February 20, 2006 is the date of his injury or disease.
 {¶ 17} 7. Biomass refused to certify the industrial claim.
 {¶ 18} 8. On July 11, 2006, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Balusamy Subbiah, M.D., who wrote:
 Mr[.] Charles Cordle was seen in our office of [sic] 7/11/2006 for evaluation of his lung injuries secondary to question of asbestos exposure, tobacco dust and chemicals at the place of work[.] This patient has worked for South Point Ethanol Plant from 1998 to 2005[.] He says from 1998 to 2005 he was exposed to asbestos at the workplace repairing the boilers in the powerhouse[.] That particular company was also contracted to destroy the tobacco for USDA and Mr[.] Cordle was exposed to a lot of dust while he was trying to destroy old stored tobacco[.] It was in large piles[.] I think he bulldozed those piles and at the end of the day he would be stained all over this [sic] body with yellow color[.] He has not been working because of [shortness of breath] since February 2005[.] Then he started working for DHL delivery company for the last 5 months but he was laid off last month[.]
 * * *
 ASSESSMENT[:] This patient at the present time doesn't have any obstructive lung disease[.] He may have mild restrictive lung disease because of obesity[.] He had a *Page 8 
pulmonary function studies done on 5/25/2005 at Our Lady of Bellefonte Hospital[.] At that time his FVC was 73%, indicating mild restrictive impairment[.] After bronchodilators, it improved about 8%. The FEVI was also slightly reduced. It was 73%[.] FEVI/FVC ratio was normal[.] Mid flow FEF 25/25 was 75% of the predicted which improved to 92% after bronchodilators, indicating some bronchial spasm[.] Total lung capacity was almost normal, 79% of the predicted[.] Residual volume was, at that time, 80% of the predicted[.] Normal FRC was slightly reduced 60%[.] His DLCs were all within normal limits[.] His ABGs at that time, PO2 74, PCO2 40. pH 7 42 indicating mild hypoxemia[.]
 This patient appears to have mild obstructive lung disease as evidenced by FEF 25/75 slightly reduced which improved after bronchodilators[.] It was done within a few months after he was exposed to tobacco dust, etc[.] Probably he had at that time some bronchitis secondary to exposure[.] At the present time, he has complete [sic] recovered[.] His pulmonary function studies are all within normal limits except slightly reduced residual volume and FRC which may be secondary to obesity[.]
 I reviewed all the records submitted to me[.] After reviewing the medical records, I think the patient developed a mild small airway impairment due to exposure to tobacco dust, etc[.] Since he had minimally abnormal pulmonary function studies after exposure to the dust, I think there is a good relationship between the alleged injury and the description of the accident reported by the worker and the claim[.] This patient did not have any [shortness of breath] or cough prior to this exposure so he did not have this condition before this alleged injury[.] I have discussed all the findings with the injured worker in detail and at the present time, his pulmonary function studies are almost within normal limits and he recovered completely though he is still symptomatic with [shortness of breath] which we could not document by our pulmonary function studies or 6 minute brisk walking[.]
 {¶ 19} 9. On November 6, 2006, the bureau mailed an order allowing the claim for "respiratory system disease." The bureau order states that the claim allowance is based on the July 11, 2006 report of Dr. Subbiah "and medical documentation on file." *Page 9 
 {¶ 20} 10. Apparently, the bureau's November 6, 2006 order was not administratively appealed.
 {¶ 21} 11. In January 2007, relator instituted a lawsuit against Biomass and others in the United States District Court for the Southern District of Ohio ("the lawsuit").
 {¶ 22} 12. On March 20, 2007, relator, Biomass, and other defendants in the lawsuit entered into a written settlement agreement and release ("settlement agreement").
 {¶ 23} 13. The March 20, 2007 settlement agreement states in part:
 * * * Plaintiff and Defendants entered into an employment relationship whereby Plaintiff worked for Biomass and/or Renewable Resources, LLC in various capacities connected with the procurement of wood waste materials for Defendants' business. In performing his work for Biomass and/or Renewable Resources, there is a dispute as to whether Plaintiff was an employee or an independent contractor. Regardless of that issue, and without any admissions regarding it, Plaintiff's employment relationship with Biomass and/or Renewable Resources ended on or about March 7, 2005. * * * The parties hereby seek to resolve all claims between them which were alleged or could have been alleged in the Litigation on the following terms and conditions. The parties hereby agree that this Agreement does not affect, in any way, Plaintiff's Ohio BWC claim no. 05-818768. * * *
 In consideration of the foregoing and the promises, warranties, undertakings, covenants and releases herein, the Parties agree as follows:
 A. Payment and Performance.
 [One] Within 7 days from the signing of this Agreement, Defendants will pay Plaintiff and his legal counsel the total sum of $12,500[.] * * *
 * * *
 [Four] This Agreement constitutes Cordle's release of all claims under the Age Discrimination and Employment Act *Page 10 
("ADEA"); Title VII of the 1964 Civil Rights Act and all amendments to that Act; and/or the Americans with Disabilities Act of 1990 and all amendments to that Act. * * *
 * * *
 C. Release, Discharge and Hold Harmless.
 In consideration of the mutual covenants provided hereunder, and upon consideration of the fulfillment of the terms, undertakings and performances required hereby, Plaintiff hereby releases and forever discharges the Defendants from any and all claims arising from or relating to Cordle's employment relationship with Biomass and/or Renewable Resources, or which were or could have been asserted in the Litigation. As of the date of this Agreement, the parties have no knowledge of any claims or potential claims by any purported or actual employee, agent or servant of Cordle against the Defendants. In the event such a claim is filed hereafter, and a court determines that Cordle was claimant's employer, then in that event Cordle agrees to hold harmless and indemnify Defendants from any and all such claims, costs, expenses and attorney fees incurred in defense thereof.
 * * *
 H. Governing Law.
 The Parties agree that this agreement shall be construed and enforced in accordance with the laws of the State of Ohio. Any action to enforce this Agreement shall be joined with and made part of the Litigation, and shall not be instituted separately.
(Emphases omitted.)
 {¶ 24} 14. Earlier, on February 26, 2007, at his own request, relator was again examined by Dr. Newman. In a report dated March 14, 2007, Dr. Newman wrote:
 Mr[.] Charles Cordle was seen in my office on February 26, 2007, to determine his percentage of permanent partial impairment in the above captioned industrial claim, which is allowed for "respiratory system disease, nec[.]"
 * * * *Page 11 
 Mr[.] Cordle presented with complaints of daily wheezing and chest tightness[.] Due to his decreased ability to exercise from the condition, he has gained 50 lbs[.] He notes increased shortness of breath with cold weather[.] He snores at night and never had this problem prior to this incident[.] He has a 2 to 3 pillow orthopnea[.] He awakens at night due to shortness of breath[.] He can no longer wear cologne and has to wear a mask when he pumps gas[.]
 * * *
 Based on the AMA Guidelines to Permanent Partial Impairment, Table 5-12, Mr[.] Cordle exhibits a Class 2 impairment of the whole person[.] Based on this, Mr[.] Cordle has a permanent partial impairment of 20% due to the allowed condition of this claim[.]
 {¶ 25} 15. On May 17, 2007, relator moved the commission for an R.C. 4123.57(D) change of occupation award in claim number 06-815027.
 {¶ 26} 16. In support of his May 17, 2007 motion, relator cited the February 20, 2006 and March 14, 2007 reports of Dr. Newman and the July 11, 2006 report from Dr. Subbiah.
 {¶ 27} 17. Following an August 22, 2007 hearing, a district hearing officer ("DHO") issued an order denying relator's motion. The DHO's order explains:
 The DHO finds that the injured worker has failed to meet his burden of proving that his change in occupation was medically advisable. The injured worker never quit his job but was terminated or laid off due to cut backs. He did not seek another job in order to limit harmful exposure.
 There is no medical evidence on file which would support that a change of occupation was medically necessitated. In fact, Dr. Subbiah (07/11/2006) notes that the injured worker has "completely recovered."
 {¶ 28} 18. Relator administratively appealed the DHO's order of August 22, 2007. *Page 12 
 {¶ 29} 19. Following a September 26, 2007 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO's order of August 22, 2007 and denies relator's May 17, 2007 motion. The SHO's order explains:
 The Staff Hearing Officer finds that Mr. Cordle has not met his burden to establish his entitlement to change of occupation compensation. Specifically, the Staff Hearing Officer finds that Mr. Cordle has not met the eligibility criteria established in Ohio Administrative Code Section 4121-3-25(A)(1). This eligibility requirement is that Mr. Cordle provide evidence that a change of occupation is medically advisable where the injured worker is not totally disabled from the occupational dust disease. Mr. Cordle relies solely upon the 02/20/2006 report from Dr. Newman. This report does not indicate a medical advisability of a change of occupation, but instead states that Mr. Cordle is temporarily and totally disabled. As such, this evidence indicates that Mr. Cordle was totally disabled inconsistent with this eligibility requirement as enumerated in the rule.
 {¶ 30} 20. On October 16, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 26, 2007.
 {¶ 31} 21. On December 20, 2007, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of October 16, 2007.
 {¶ 32} 22. On January 24, 2008, relator, Charles C. Cordle, filed this mandamus action.
 {¶ 33} 23. On March 17, 2008, Biomass moved for dismissal of this action or, in the alternative, for summary judgment. In support of its motion, Biomass attached a copy of the March 20, 2007 settlement agreement.
 {¶ 34} 24. On March 31, 2008, the magistrate issued an order setting Biomass' motion for summary judgment for submission to the magistrate on April 14, 2008. *Page 13 
 {¶ 35} 25. Earlier, on March 28, 2008, relator filed a memorandum contra with an attached copy of the March 20, 2007 settlement agreement.
 {¶ 36} 26. On April 10, 2008, Biomass filed a reply memorandum in support of its motions to dismiss and for summary judgment.
 {¶ 37} 27. On April 14, 2008, the commission filed its memorandum contra.
 {¶ 38} 28. Pursuant to the magistrate's order, the parties have stipulated to evidence and have filed their respective briefs addressing the question of whether the commission abused its discretion in denying an R.C. 4123.57(D) change of occupation award. It should be noted that the settlement agreement is not among the documents stipulated by the parties. Apparently, the settlement agreement was never submitted to the commission during any of the administrative proceedings involved in this case.
Conclusions of Law: {¶ 39} Two main issues are presented: (1) whether this court should grant Biomass' motion to dismiss or, in the alternative, for summary judgment, and (2) if the motions be denied, whether the commission abused its discretion in denying relator's motion for an R.C. 4123.57(D) change of occupation award.
 {¶ 40} The magistrate finds: (1) neither dismissal nor summary judgment are appropriate, and (2) the commission abused its discretion in denying relator's motion for an R.C. 4123.57(D) change of occupation award.
 {¶ 41} Accordingly, it is the magistrate's decision that this court deny Biomass' March 17, 2008 motion to dismiss or, in the alternative, for summary judgment. Furthermore, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
Biomass' motion to dismiss or, in the alternative, for summaryjudgment *Page 14 
 {¶ 42} Both the motion to dismiss and the motion for summary judgment are predicated upon the settlement agreement, a copy of which Biomass attached to its motions. However, Biomass submitted no affidavit in support of summary judgment and, thus, the settlement agreement was not authenticated nor attested to pursuant to Civ. R. 56. Likewise, relator attached a copy of the settlement agreement to his memorandum contra. Relator also submitted no affidavit to authenticate the settlement agreement. However, relator has not objected to this court's acceptance of the settlement agreement attached to Biomass' motion.
 {¶ 43} A Civ. R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint. State ex rel. Boggs v. Springfield Local School Dist. Bd.of Edn. (1995), 72 Ohio St.3d 94, 95. Because Biomass' motion to dismiss is predicated on the settlement agreement that is not averred in the complaint, the motion to dismiss attempts to present a matter outside the pleading. While Civ. R. 12(B) permits this court to treat such a motion as one for summary judgment, the magistrate has not chosen to do so.
 {¶ 44} In the absence of converting the motion to dismiss to one for summary judgment, Biomass' motion to dismiss is inappropriate.Boggs.
 {¶ 45} Civ. R. 56(C) provides:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment *Page 15 
is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
 {¶ 46} Civ. R. 56(E) provides:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. * * *
 {¶ 47} Biomass failed to comply with Civ. R. 56(C) and (E) when it submitted the settlement agreement by simply attaching a copy to its motions. Under such circumstances, the settlement agreement would ordinarily not be accepted as evidence to be considered on a motion for summary judgment. Ebbets Partners Ltd. v. Day, Montgomery App. No. 19748, 2003-Ohio-4425 (accounts sale agreement was attached to summary judgment motion without a supporting affidavit); R.G. Engineering Mfg.v. Rance, Columbiana App. No. 01-CO-12, 2002-Ohio-5218 (attachment of logbook and financial statements to summary judgment motion failed to comply with Civ. R. 56[E] in the absence of supporting affidavit);Powell v. Vorys, Sater, Seymour Pease (1998), 131 Ohio App.3d 681
(documents attached to summary judgment motion failed to comply with Civ. R. 56[C] in the absence of a supporting affidavit).
 {¶ 48} However, where an opposing party fails to object to the movant's use of non-complying evidence, the court may consider the evidence on a motion for summary judgment. Brown v. Ohio Cas. Ins.Co. (1978), 63 Ohio App.2d 87; Green v. B.F. Goodrich Co. (1993),85 Ohio App.3d 223 (citing the Brown case for authority).
 {¶ 49} Here, relator not only failed to object to Biomass' non-compliant use of the settlement agreement, relator also submitted a copy of the settlement agreement for *Page 16 
this court's consideration. Accordingly, under these circumstances, the magistrate shall accept the settlement agreement as evidence to be considered on Biomass' motion for summary judgment. Thus, the magistrate shall address the merits of Biomass' motion.
 {¶ 50} According to Biomass, relator violates the terms of the settlement agreement and is in breach thereof by maintaining this mandamus action. Biomass emphasizes certain language of the settlement agreement: "Plaintiff hereby releases and forever discharges the Defendants from any and all claims arising from or relating to Cordle's employment relationship with Biomass and/or Renewable Resources, or which were or could have been asserted in the Litigation."
 {¶ 51} Furthermore, Biomass argues that the settlement agreement excepted only one industrial claim, i.e., claim number 05-818768 and thus, the instant industrial claim (number 06-815027) must be included as a claim subject to the settlement and release. Relator contends that the rule of construction, expressio unius est exclusio alterius, requires that the settlement agreement be interpreted to include the instant industrial claim as among the claims relator released.
 {¶ 52} Relator and respondent point out that R.C. 4123.65 provides a statutory procedure for the settlement of industrial claims.
 {¶ 53} R.C. 4123.65(A) provides:
 A state fund employer or the employee of such an employer may file an application with the administrator of workers' compensation for approval of a final settlement of a claim under this chapter. The application shall include the settlement agreement, and except as otherwise specified in this division, be signed by the claimant and employer, and clearly set forth the circumstances by reason of which the proposed settlement is deemed desirable and that the parties agree to the terms of the settlement agreement. * * *
 {¶ 54} R.C. 4123.65(C) provides: *Page 17 
No settlement agreed to under division (A) of this section * * * shall take effect until thirty days after the administrator approves the settlement for state fund employees and employers[.] * * *
 {¶ 55} R.C. 4123.65(D) provides:
 At the time of agreement to any final settlement agreement under division (A) of this section * * * the administrator, for state fund settlements, * * * immediately shall send a copy of the agreement to the industrial commission who shall assign the matter to a staff hearing officer. The staff hearing officer shall determine, within the time limitations specified in division (C) of this section, whether the settlement agreement is or is not a gross miscarriage of justice. * * *
 {¶ 56} Citing R.C. 4123.65, relator and the commission contend that the instant industrial claim remains administratively viable and actionable in mandamus until such time as the claim is settled pursuant to the statute.
 {¶ 57} Given that Biomass does not claim that R.C. 4123.65 was employed to settle the instant industrial claim, relator and the commission argue that this mandamus action can be maintained. The magistrate agrees.
 {¶ 58} Whether or not the terms of the settlement agreement permit or require a party to the agreement to file an application with the administrator for approval of a final settlement of the instant claim is not an issue before this court. Parenthetically, the magistrate notes that section (H) of the settlement agreement provides: "Any action to enforce this Agreement shall be joined with and made part of the Litigation, and shall not be instituted separately."
 {¶ 59} The settlement agreement, by itself, cannot bar this mandamus action. Without an R.C. 4123.65 approval of the administrator and a determination by a commission SHO regarding settlement, this mandamus action is not barred. Raymond v. Shaker Produce, Inc., Cuyahoga App. No. 84885, 2005-Ohio-1670. *Page 18 
 {¶ 60} Accordingly, for the foregoing reasons, it is the magistrate's decision that this court deny Biomass' motion to dismiss or, in the alternative, for summary judgment.
 The change of occupation award {¶ 61} As previously noted, the second issue is whether the commission abused its discretion in denying relator's motion for an R.C. 4123.57(D) change of occupation award.
 {¶ 62} R.C. 4123.57(D) provides for a so-called change of occupation award:
 If an employee of a state fund employer makes application for a finding and the administrator finds * * * that a change of such employee's occupation is medically advisable in order to decrease substantially further exposure to silica dust, asbestos, or coal dust and if the employee, after the finding, has changed or shall change the employee's occupation to an occupation in which the exposure to silica dust, asbestos, or coal dust is substantially decreased, the administrator shall allow to the employee an amount * * * for a period of thirty weeks, commencing as of the date of the discontinuance or change, * * * and benefits shall cease * * * for any period during which the employee may be entitled to receive compensation or benefits under section 4123.68 of the Revised Code on account of disability from silicosis, asbestosis, or coal miners' pneumoconiosis. * * *
 {¶ 63} R.C. 4123.68, cited at R.C. 4123.65(D) as quoted above, provides:
 Compensation on account of silicosis, asbestosis, or coal miners' pneumoconiosis are payable only in the event of temporary total disability, permanent total disability, or death, in accordance with sections 4123.56, 4123.58, and 4123.59 of the Revised Code. * * *
 {¶ 64} Supplementing the statutes, Ohio Adm. Code 4121-3-25 provides:
 (A) Eligibility for a change of occupation allowance.
 (1) Where it is found that a change of occupation is medically advisable for an employee suffering from silicosis, coal miners' pneumoconiosis or asbestosis contracted in the course of employment but not totally disabled therefrom, and, any other diseases which may be specified by law for *Page 19 
which the statutory allowance for change of occupation may be granted, or
 * * *
 (3) Pursuant to the provisions of section 4123.57
of the Revised Code such employee may make application for the approval of the statutory allowance for such change of occupation, in order to decrease substantially further injurious exposure.
 {¶ 65} The magistrate observes that Ohio Adm. Code 4121-3-25(A)(1)'s provision "but not totally disabled" tracks R.C. 4123.57(D)'s provision that "benefits shall cease * * * for any period during which the employee may be entitled to receive compensation or benefits under section 4123.68 of the Revised Code on account of disability from silicosis, asbestosis, or coal miners' pneumoconiosis."
 {¶ 66} Parenthetically, it should be noted that State ex rel.Middlesworth v. Regal Ware, Inc. (2001), 93 Ohio St.3d 214
("Middlesworth I"), expanded eligibility for R.C. 4123.57(D) change of occupation benefits. Previously confined to claimant's with asbestosis, silicosis, or coal miners' pneumoconiosis, after Middlesworth I, R.C. 4123.57(D) applied to an otherwise qualifying claimant who had any dust-induced occupational disease. State ex rel. Regal Ware, Inc. v.Indus. Comm., 105 Ohio St.3d 1, 2004-Ohio-6893. While the industrial claim is allowed for "respiratory system disease," no one here disputes that Middlesworth I's expanded eligibility applies to relator's industrial claim.
 {¶ 67} Because R.C. 4123.68 provides that compensation on account of silicosis, asbestosis, or coal miners' pneumoconiosis is payable only in the event of temporary total disability ("TTD"), permanent total disability ("PTD"), or death, it is clear that R.C. 4123.57(D)'s reference to R.C. 4123.68 requires that change of occupation *Page 20 
compensation shall not be paid during a period of TTD, PTD, or subsequent to the death of the injured worker.
 {¶ 68} In effect, R.C. 4123.57(D) prohibits an R.C. 4123.57(D) award that runs concurrently with an award of TTD or PTD.
 {¶ 69} Notwithstanding the above analysis, the SHO's order of September 26, 2007 holds that relator was ineligible for a change of occupation award because Dr. Newman found him to be TTD. That holding is premised upon a misinterpretation of Ohio Adm. Code 4121-3-25(A)(1).
 {¶ 70} Clearly, neither the statute nor the rule prohibit a change of occupation award simply because the claimant's physician opines that the claimant is TTD.
 {¶ 71} Again, the statute and rule prohibit a change of occupation award running concurrently with an award of TTD or PTD. There is no evidence here that relator is seeking a change of occupation award that would run concurrently with an award of TTD or PTD compensation.
 {¶ 72} Based upon the above analysis, the magistrate concludes that the SHO's determination that relator is ineligible for a change of occupation award because Dr. Newman opined that he was TTD constitutes an abuse of discretion.
 {¶ 73} The SHO also held that Dr. Newman's report cannot support a determination that a change of occupation is "medically advisable" because Dr. Newman "instead states that Mr. Cordle is temporarily and totally disabled." The SHO's holding is a further abuse of discretion.
 {¶ 74} Clearly, an inability to return to the former position of employment is not inconsistent with it being medically advisable to change one's occupation from that former position of employment. In his report of February 20, 2006, Dr. Newman writes: *Page 21 
"has not been able to work since February of 2005." The report can be read to attribute the inability to work to the symptoms of chronic obstructive pulmonary disease.
 {¶ 75} It is not the duty of this court or this magistrate to determine whether it was medically advisable that relator change his occupation. That task remains with the commission. However, the commission cannot reject Dr. Newman's report as evidence of medical advisability simply because Dr. Newman opined that relator is TTD.
 {¶ 76} Respondents here claim that the SHO could have denied the motion for a change of occupation award based upon grounds not expressed in the SHO's order. In effect, respondents invite this court to adjudicate the motion for the commission. This court should decline the invitation. Clearly, the SHO's stated basis for denial of the motion constitutes an abuse of discretion.
 {¶ 77} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of September 26, 2007 and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates relator's motion for a change of occupation award. It is further the magistrate's decision that this court deny Biomass' motion to dismiss or, in the alternative, for summary judgment.
[1] Notably, Biomass did not object to the magistrate's recommendation that we deny its motion to dismiss or, in the alternative, for summary judgment. *Page 1